UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN, <br><br> Plaintiff, <br><br> - against - <br><br> TFS FINANCIAL CORPORATION, <br><br> Defendant. | CIVIL ACTION NO. _____ |

# COMPLAINT

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

## NATURE OF THE ACTION

1.  This is a stockholder's direct action under Section 14(a) of the Securities Exchange Act of 1934, as amended (the Exchange Act), 15 U.S.C. § 78n(a), and the rules and regulations of the United States Securities and Exchange Commission (the SEC).

2.  Plaintiff, a shareholder in Defendant TFS Financial Corporation ("TFS" or the "Company"), seeks an injunction to prevent a vote by its shareholders on Management Proposals 3 and 4 in the 2018 Proxy Statement for the annual meeting of TFS shareholders scheduled for February 22, 2018. The grounds for this injunction are Defendant's failures to comply with the SEC's disclosure requirements for proxy statements.

3.  Management Proposal 3 requests that the shareholders reapprove the Company's Management Incentive Plan ("Cash Plan"). There are many good reasons to request that shareholders approve a company compensation plan, but the reason provided for stockholders to

approve the Incentive Plan in the 2018 Proxy Statement is incorrect.  Specifically, the 2018 Proxy Statement says that reapproval of the Incentive Plan by stockholders is necessary for the Company to deduct certain performance-based compensation under Internal Revenue Code § 162(m).  However, the performance-based compensation exception under IRC §162(m) has been repealed due to recent amendments to the IRC.  Therefore, Proposal 3 is false and misleading to stockholders.  Other than IRC § 162(m), no reason is provided as to why Proposal 3 is being submitted to stockholders.

4. Management Proposal 4 requests stockholder approval of the Company's Amended and Restated 2008 Equity Incentive Plan ("Equity Plan").  This request is being made to extend the term of the Equity Plan, which will otherwise expire on May 29, 2018.   Similar to Management Proposal 3, this proposal makes many false statements concerning IRC § 162(m) and how compensation provided under the Equity Plan will qualify for the performance-based compensation under that tax provision.  Again, since the performance-based compensation exception under IRC §162(m) has been repealed, these statements are false and misleading.

5. Because the 2018 Proxy Statement is false and misleading, and the Court should enjoin the votes on Management Proposals 3 and 4 unless and until Defendant furnishes its shareholders with a supplemental proxy statement correcting these false disclosures.

6. Moreover, the Cash Plan and the Equity Plan themselves, which are both appended to the 2018 Proxy Statement and are part of Proposals 3 and 4 also contain many false statements concerning IRC § 162(m) and how compensation provided under these plans will qualify for the performance-based compensation under that tax provision. Again, since the performance-based compensation exception under IRC §162(m) has been repealed, these

statements are false and misleading. These plans must be corrected so that they comply with current tax law.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

8. In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

9. Venue is proper in this district because, as allowed under Section 27(a) of the Exchange Act, this district is where the violation at issue in this case occurred because the Plaintiff is a resident of this district.

## PARTIES

10. Plaintiff is, and has been continuously since June 2014, a holder of TFS common stock.

11. TFS is a federally chartered stock holding company and is domiciled in Wilmington, Delaware. The Company's last fiscal year ended September 30, 2017. As of December 26, 2017, it had 281,052,481 shares of common stock outstanding. TFS's stock is traded on the NASDAQ under the symbol TFSL. TFS conducts its principal activities through its wholly owned subsidiaries, and its principal line of business is retail consumer banking, including mortgage lending, deposit gathering, and other insignificant financial services.

## WRONGFUL ACTS AND OMISSIONS

12. IRC 162(m) places a $1 million annual limit on the compensation that publicly-held companies can deduct that is paid to each of its five highest-compensated officers. Until recently, there was an exception whereby certain "performance-based compensation" in excess

of this $1 million limit would be tax-deductible so long as the it conformed to certain requirements. One such requirement was that stockholders were required to vote on and approve the objective performance goals that would then be used to determine the remuneration to be paid. This requirement was in IRC 162(m)(4)(C)(ii).

13. On December 20, 2017, Congress passed the Tax Cuts and Jobs Act (the "Tax Act"), which repealed the Section 162(m) exemption for "performance-based compensation" and changed the certain definitions in this IRC subsection. *See* Tax Cuts and Jobs Act, H.R. Report 115-466, 115th Cong. § 13601 (2017). On December 22, 2017, President Trump signed the Tax Act into law.

14. TFS has scheduled its annual shareholders' meeting for February 22, 2018. On January 9, 2018, it furnished its shareholders with the 2018 Proxy Statement to solicit their proxies for five management proposals, and to transact other business that may properly come before the annual meeting.

15. The 2018 Proxy Statement has failed to acknowledge the change to the Internal Revenue Code and, as a result, it contains an enormous amount of false statements concerning IRC § 162(m). What follows are those misstatements that could be readily identified though there may be others.

16. Management Proposal 3 requests that the shareholders reapprove the Cash Plan. This Proposal makes the following false or misleading statements regarding IRC § 162(m):

- "Section 162(m) of the Code and the regulations and interpretations promulgated thereunder ('Section 162(m)') require that stockholders reapprove the Management Incentive Compensation Plan every five years in order to qualify the awards issued under the plan as "performance-based" compensation for purposes of Section 162(m). This would allow us to deduct for tax purposes the value of such awards even if the compensation received when such awards are earned, when combined with other income of a participant, exceeds $1.0 million per year."

4

- "The Committee may also grant annual incentive awards and long-term incentive awards that do not qualify as performance-based compensation within the meaning of Section 162(m)."

- "Without limiting the foregoing, the Committee may, in a manner consistent with the requirements of Section 162(m), include or exclude extraordinary or nonrecurring items, including but not limited to, any of the following events that occur during the performance period: (a) asset write-downs; (b) loan sales; (c) amortization of loan servicing rights; (d) changes in pension or medical coverage charges; (e) litigation or claim judgments or settlements; (f) the effect of changes in tax laws, accounting principles, or other laws or provisions affecting reported results; (g) any reorganization and restructuring programs; (h) extraordinary nonrecurring items as described in financial condition and results of operations appearing in the Company's annual report to stockholders for the applicable year; or (i) acquisitions and divestitures"

- "In the event the Committee determines that it is advisable to grant an annual incentive award or long-term incentive award that will not qualify as performance-based compensation, it may make such grants without satisfying the requirements of Section 162(m) and may base vesting on performance measures other than those specified in the Management Incentive Compensation Plan."

- "The Committee may adjust performance measures after they have been set, but only to the extent the Committee exercises negative discretion as permitted under applicable law for purposes of an exception to Section 162(m). Notwithstanding the foregoing, in the event that applicable tax and/or securities laws change to permit the Committee discretion to alter the governing performance measures under the Management Incentive Compensation Plan without obtaining stockholder approval for such changes, the Committee will have the sole discretion to make such changes without obtaining stockholder approval."

- "The following is a summary of the United States federal income tax consequences that may arise in conjunction with participation in the Management Incentive Compensation Plan based on United States tax laws and regulations as of the date of this proxy, which are subject to change, and the discussion does not purport to be a complete description of the United States income tax aspects of the Management Incentive Compensation Plan. This summary is based on the federal tax laws in effect as of the date of this proxy statement."

- "***Deduction Limits.***   Section 162(m) generally limits the Company's deduction for compensation in excess of $1.0 million per year for our chief executive officer and the four most highly compensated executives (excluding our chief executive officer) named in our summary compensation table. "Qualified performance-based compensation" is not subject to this limit and is fully deductible by the

5

Company. The Management Incentive Compensation Plan is designed so that awards under the plan will result in qualified performance-based compensation when earned. However, the Committee is not obligated to grant all awards as qualified performance-based compensation. We expect the Committee will take the deduction limit into account when making awards."

17. In addition, according to the 2018 Proxy Statement, Management Proposal 3 is "qualified in its entirety by reference to the Management Incentive Compensation Plan, a copy of which is attached as Appendix A to this Proxy Statement." The Cash Plan, attached as Appendix A to the 2018 Proxy Statement, makes the following false statements regarding IRC § 162(m):

- "The intent of the Plan is to provide "performance-based compensation" within the meaning of Section 162(m)(4)(C) of the Code. The provisions of the Plan shall be construed and interpreted to effectuate such intent."

- "**Section 2.9**    '**Covered Employee**' for a Plan Year means any Employee of the Company who is or may become a 'Covered Employee,' as defined in Section 162(m) of the Code and who is designated, either as an individual Employee or class of Employees, by the Committee within the shorter of (i) ninety (90) days after the beginning of the Plan Year, or (ii) the end of the period that is twenty-five percent (25%) of the period of service during which the performance goals must be satisfied."

- "**Section 2.13**    '**Outside Director**' means an 'outside director' within the meaning of Section 162(m)(4)(C)(i) of the Code."

- "**Section 2.15**    '**Performance-Based Compensation**' means compensation that satisfies the requirements of Section 162(m) of the Code for deductibility of remuneration paid to Covered Employees as 'performance-based compensation'."

- "**Section 7.2**    **Evaluation of Performance**. The Committee may provide in any such Annual Incentive Award or Long-Term Incentive Award that any evaluation of performance may include or exclude any of the following events that occurs during a Performance Period: (a) asset write-downs, (b) loan sales, (c) amortization of loan servicing rights, (d) change in pension or medical coverage charges, (e) litigation or claim judgments or settlements, (f) the effect of changes in tax laws, accounting principles, or other laws or provisions affecting reported results, (g) any reorganization and restructuring programs, (h) extraordinary nonrecurring items as described in FASB Accounting Standards Codification Topic 225-20, Income Statement-Extraordinary and Unusual Items, and/or in management's discussion and analysis of financial condition and results of operations appearing in the Company's annual report to stockholders for the applicable year, (i) acquisitions or divestitures, and (j) foreign exchange gains and

losses. These inclusions or exclusions shall be prescribed in a form that meets the requirements of Code Section 162(m) for deductibility."

- "**Section 7.4    Committee Discretion.** In the event that applicable tax and/or securities laws change to permit Committee discretion to alter the governing Performance Measures without obtaining stockholder approval of such changes, the Committee shall have sole discretion to make such changes without obtaining stockholder approval. In addition, in the event that the Committee determines that it is advisable to grant Annual Incentive Awards or Long-Term Incentive Awards that shall not qualify as Performance-Based Compensation, the Committee may make such grants without satisfying the requirements of Code Section 162(m) and base vesting on Performance Measures other than those set forth in Section 7.1."

- "**Article 9. Stockholder Approval** The effectiveness of the Plan is subject to its approval and ratification by the stockholders of the Company to the extent required by Section 162(m)(4)(C)(ii) of the Code."

18.  While there are many beneficial reasons to give stockholders a vote on company compensation plan, no other reason has been given for stockholders to vote on the Cash Plan aside from the now-defunct shareholder vote that had been required by IRC § 162(m)(4)(C)(ii).

19.  Management Proposal 4 requests that the shareholders reapprove the Equity Plan. This Proposal makes the following false statements regarding IRC § 162(m):

- "Under current law, stockholder approval will also enable us to deduct the expense of certain awards for federal income tax purposes and will exempt the awards from the short-swing profit trading rules of Section 16(b) of the Exchange Act."

- "The Equity Incentive Plan will be administered by the members of the Compensation Committee of the Company, which will consist of board members who are independent under NASDAQ listing rules and do not receive remuneration from the Company in any capacity other than as a director, except for compensation in an amount for which disclosure would not be required under SEC disclosure rules. In addition each current member of the Committee is a disinterested director within the meaning of Rule 16b-3 under the Securities Exchange Act of 1934, as amended, and, with the exception of Mr. Ringenbach, a "non-employee director" within the meaning of Section 162(m) of the Internal Revenue Code of 1986, as amended (the 'Code'). As a former officer of the Company, Mr. Ringenbach does not meet the definition of a "non-employee" director within the Code and does not vote on actions affecting the tax deductibility of compensation. The Committee has full and exclusive power within the limitations set forth in the Equity Incentive Plan to make all decisions

and determinations regarding the selection of participants and the granting of awards; establishing the terms and conditions relating to each award; adopting rules, regulations and guidelines for carrying out the Equity Incentive Plan's purposes; and interpreting and otherwise construing the Equity Incentive Plan. The Equity Incentive Plan also permits the Committee to (i) delegate to one or more members of the Board who are not 'outside directors' within the meaning of Section 162(m) of the Code, the Committee's power to grant awards under the plan to persons who are not persons with respect to whom the Company wishes to comply with Section 162(m) of the Code, or (ii) delegate to a committee of one or more members of the Board who are not 'non-employee directors' the authority to grant awards to eligible persons who are not subject to Section 16 of the Exchange Act."

- "The Committee may, in a manner consistent with the requirements of Section 162(m) of the Code to the extent required, include or exclude extraordinary or nonrecurring items, including but not limited to, any of the following events that occur during the performance period: (a) asset write-downs; (b) litigation or claim judgments or settlements; (c) the effect of changes in tax laws, accounting principles, or other laws or provisions affecting reported results; (d) any reorganization and restructuring programs; (e) extraordinary nonrecurring items as described in financial condition and results of operations appearing in the Company's annual report to stockholders for the applicable year; or (f) acquisitions and divestitures."

- "The Committee may adjust performance measures after they have been set, but only to the extent the Committee exercises negative discretion as permitted under applicable law for purposes of an exception to Section 162(m) of the Code and not in a manner that shall result in an increase in compensation. Additionally, the grant of an award intended to be 'performance-based compensation' within the meaning of Section 162(m) of the Code and the establishment of any performance based measures shall be made during the period required by Section 162(m) of the Code."

- "After setting the performance measures applicable to a performance award subject to Section 162(m) of the Code, the Committee may change them only in limited circumstances such as a change in control, stock split, stock dividend, merger, consolidation or reorganization, acquisition or disposition of a material business unit or an infrequently occurring or extraordinary gain or loss. Under such circumstances, the Committee may adjust the performance measures in a manner designed to maintain as closely as possible the previously established expected level of performance. Any such adjustment to the award opportunities or performance measures for our chief executive officer and our three other most highly paid executives (other than our chief executive officer or chief financial officer) named in the summary compensation table in our proxy statement (or anyone the Committee determines is reasonably likely to be such an individual) will comply with Section 162(m) of the Code to the extent required."

- "All awards to an officer or director shall vest, to the extent set forth in an award agreement, immediately upon the participant's death, disability or retirement, provided, however, that any awards intended to qualify as qualified performance-based compensation under Section 162(m) of the Code (other than a stock option or stock appreciation right) will not vest immediately upon retirement."

- "To the extent provided in an award agreement, all other awards, except performance-based awards subject to Section 162(m) of the Code, shall become fully vested on retirement. In the sole discretion of the Committee, performance-based awards subject to Section 162(m) of the Code may vest on retirement, so long as the vesting is not accelerated, and is prorated based on the participant's period of employment during the performance period and actual achievement of the performance measures."

- "Deduction Limits. Section 162(m) of the Code generally limits the Company's ability to deduct compensation in excess of $1.0 million per year for our chief executive officer and the three other most highly compensated executives (excluding our chief financial officer) named in our summary compensation table ("covered employees"). Restricted stock awards (other than performance-based restricted stock awards), dividend equivalent rights, and other awards that are not subject to performance goals may be subject to this deduction limit if the amount of the value of the awards plus other compensation of the executive that is subject to the limit exceeds $1.0 million. 'Qualified performance-based compensation' is not subject to this limit and is fully deductible by the Company. 'Qualified performance-based compensation' is compensation that is subject to a number of requirements such as stockholder approval of possible performance goals, and objective quantification of those goals in advance. Awards that are subject to performance goals that provide for accelerated vesting upon retirement or involuntary termination (other than due to death or disability) will not be considered performance-based compensation under Section 162(m) of the Code. Accordingly, if such awards are not exempt from Section 162(m) of the Code, income recognized on such awards by a covered employee will be subject to the $1.0 million deduction limit on compensation.

   In the case of performance-based awards granted to a covered employee that are not distributed until after the covered employee's retirement or other termination of employment, the $1.0 million deduction limit will not apply and the award will be fully deductible. Performance awards may provide for accelerated vesting upon death, disability, or a change in control and still be considered exempt from the $1.0 million deduction limit of Section 162(m) of the Code. The Equity Incentive Plan is designed so that stock options, stock appreciation rights, performance-based restricted stock awards, restricted stock unit awards, performance share awards, performance unit awards, and other stock-based awards that are subject to performance goals may qualify as qualified performance-based compensation that is not subject to the $1.0 million deduction

limit. We expect that the Committee will consider these deduction limits in setting the size and the terms and conditions of awards. However, the Committee may decide to grant awards that exceed the deduction limit."

20. In addition, according to the 2018 Proxy Statement, Management Proposal 4 "is qualified in its entirety by reference to the provisions of the Equity Incentive Plan, attached hereto as Appendix B." The Equity Plan, attached as Appendix B to the 2018 Proxy Statement, makes the following false statements regarding IRC § 162(m):

- "The performance levels to be achieved for each performance period and the amount of the Award to be distributed shall be conclusively determined by the Committee. Performance Share Awards shall be paid in a lump sum following the close of the performance period to which they relate and after the Committee certifies that the applicable performance levels have been satisfied. The grant of any Performance Share Award and the establishment of performance measures for Performance Share Awards to Covered Employees that are intended to be performance based compensation shall be made during the period required under Code Section 162(m) and shall comply with all applicable requirements of Code Section 162(m)."

- "The performance levels to be achieved for each performance period and the amount of the Award to be distributed shall be conclusively determined by the Committee prior to any distribution. Performance Unit Awards shall be paid in a lump sum following the close of the performance period to which they relate. The grant of any Award and the establishment of performance measures for Awards to Covered Employees that are intended to be performance based compensation shall be made during the period required under Code Section 162(m) and shall comply with all applicable requirements of Code Section 162(m)."

- "*Adjustments.* Pursuant to this Section 2.5, in certain circumstances the Committee may adjust performance measures; provided, however, no adjustment may be made with respect to an Award that is intended to be performance-based compensation within the meaning of Code Section 162(m), except to the extent the Committee exercises such negative discretion as is permitted under applicable law for purposes of an exception under Code Section 162(m) so that no adjustments or exercise of discretion results in an increase in compensation with respect to an Award intended to be performance-based compensation. If the Committee determines that a change in the business, operations, corporate structure or capital structure of the Company or the manner in which the Company or its Subsidiaries conducts its business or other events or circumstances render current performance measures to be unsuitable, the Committee may modify such performance measures, in whole or in part, as the Committee deems appropriate. If a Participant is promoted, demoted or

transferred to a different business unit during a performance period, the Committee may determine that the selected performance measures or applicable performance period are no longer appropriate, in which case, the Committee, in its sole discretion, may: (i) adjust, change or eliminate the performance measures or change the applicable performance period; or (ii) cause to be made a cash payment to the Participant in an amount determined by the Committee."

- "**Section 2.11** **Effect of Termination of Service on Awards.** The Committee shall establish the effect of a Termination of Service on the continuation of rights and benefits available under an Award or the Amended Plan and, in so doing, may make distinctions based upon, among other things, the cause of Termination of Service and type of Award. Unless the Committee shall specifically state otherwise at the time an Award is granted, all Awards to an Employee, Director or service provider shall vest immediately upon such individual's death, Disability or, only to the extent set forth in an Award Agreement, on the Retirement of the Employee or Director, provided however, that Performance Share Awards, Performance Unit Awards or other Awards intended to qualify as performance-based compensation under Code Section 162(m) (other than a Stock Option or SAR award unless subject to performance based criteria) will not immediately vest on Retirement but may vest to the extent set forth in Section 2.5(e). Unless otherwise provided in an Award Agreement, the following provisions shall apply to each Award granted under the Amended Plan:"

- "(c)   Upon Termination of Service for reason of Disability or death, all Stock Options and SARs shall be exercisable as to all shares subject to an outstanding Award, whether or not then exercisable, and all other Awards, other than any Award that is intended to qualify as performance-based compensation under Code Section 162(m), shall become fully vested at the date of Termination of Service. Options and SARs may be exercised for a period of one year following (or for the remaining term, if less) Termination of Service, provided, however, that no Stock Option shall be eligible for treatment as an ISO in the event such Stock Option is exercised more than one year following termination of employment due to Disability, and provided, further, in order to obtain ISO treatment for Stock Options exercised by heirs or devisees of an optionee, the optionee's death must have occurred while employed or within three (3) months of termination of employment."

- "(d)   If specified in a Participant's Award Agreement, upon Termination of Service because of Retirement, all Stock Options and SARs shall be exercisable as to all shares subject to an outstanding Award (except those that are subject to performance-based criteria), whether or not then exercisable at the date of Termination of Service and for a period of one year (or for the remaining term, if less). Other Awards, other than those Awards the vesting of which is based on satisfaction of performance-based conditions subject to Code Section 162(m), shall become fully vested on Retirement only to the extent set forth in a Participant's Award Agreement."

- "(a)    General. In the event any recapitalization, forward or reverse stock split, reorganization, merger, consolidation, spin-off, combination, repurchase, or exchange of shares of Stock or other securities, stock dividend or other special and nonrecurring dividend or distribution (whether in the form of cash, securities or other property), liquidation, dissolution, or other similar corporate transaction or event, affects the shares of Stock such that an adjustment is appropriate in order to prevent dilution or enlargement of the rights of Participants under the Amended Plan and/or under any Award granted under the Amended Plan, then the Committee shall, in an equitable manner, adjust any or all of (i) the number and kind of securities deemed to be available thereafter for grants of Stock Options, SARs, Restricted Stock Awards, or other Awards in the aggregate to all Participants and individually to any one Participant, (ii) the number and kind of securities that may be delivered or deliverable with respect to outstanding Stock Options, SARs, Restricted Stock Awards, or other Awards and (iii) the Exercise Price of Stock Options and SARs. In addition, the Committee is authorized to make adjustments in the terms and conditions of, and the criteria included in, Stock Options, SARs, Restricted Stock Awards, and other Awards (including, without limitation, cancellation of Stock Options, SARs, Restricted Stock Awards, and other Awards in exchange for the in-the-money value, if any, of the vested portion thereof, or substitution of Stock Options, SARs or Restricted Stock Awards and other Awards using stock of a successor or other entity) in recognition of unusual or nonrecurring events (including, without limitation, events described in the preceding sentence) affecting the Company or any parent or Subsidiary or the financial statements of the Company or any parent or Subsidiary, or in response to changes in applicable laws, regulations, or accounting principles. Unless otherwise determined by the Committee, any such adjustment to an Award intended to qualify as "performance-based compensation" shall conform to the requirements of Code Section 162(m) and the regulations thereunder then in effect."

- "**Section 5.1    Administration.** The Amended Plan shall be administered by the members of the Compensation Committee of the Company, which shall have not less than two Disinterested Board Members as long as the performance-based pay exception of Section 162(m) of the Code (the "Exception") remains in effect. If the Committee has fewer than two Disinterested Board Members while the Exception remains in effect, then the Board shall appoint to the Committee such additional Disinterested Board Members as shall be necessary to have at least two Disinterested Board Members. Any members of the Committee who do not qualify as Disinterested Board Members shall abstain from participating in any discussion to make or administer Awards that will be subject to the Exception. The Board (or those members of the Board who are "independent directors" under the corporate governance statutes of any national securities exchange on which the Company lists its securities) may, in its discretion, take any action and exercise any power, privilege or discretion conferred on the Committee under the

Amended Plan with the same force and effect under the Amended Plan as if done or exercised by the Committee."

- "(a)   Subject to the provisions of the Amended Plan, the Committee will have the authority and discretion to select from among the Company's and its Subsidiaries' Employees, Directors and service providers, those persons who shall receive Awards, to determine the time or times of receipt of Awards, to determine the types of Awards and the number of shares covered by the Awards, to establish the terms, conditions, performance criteria, restrictions (including without limitation, provisions relating to non-competition, non-solicitation and confidentiality), and other provisions of such Awards (subject to the restrictions imposed by Article 6), to cancel or suspend Awards (subject to the conditions of Sections 6.1 and 7.17) and, except with respect to Performance Awards intended to be subject to Code Section 162(m) or time-based vested Awards following a Change in Control, to reduce, eliminate or accelerate any restrictions or vesting requirements applicable to an Award at any time after the grant of the Award."

- "**Section 5.3   Delegation by Committee.**  Except to the extent prohibited by applicable law, the applicable rules of a stock exchange or the Amended Plan, or as necessary to comply with the exemptive provisions of Rule 16b-3 promulgated under the Exchange Act or Code Section 162(m), the Committee may allocate all or any portion of its responsibilities and powers to any one or more of its members and may delegate all or any part of its responsibilities and powers to any person or persons selected by it, including: (a) delegating to a committee of one or more members of the Board who are not "outside directors" within the meaning of Code Section 162(m), the authority to grant Awards under the Amended Plan to eligible persons who are not persons with respect to whom the Company wishes to comply with Code Section 162(m); or (b) delegating to a committee of one or more members of the Board who are not "non-employee directors," within the meaning of Rule 16b-3, the authority to grant Awards under the Amended Plan to eligible persons who are not then subject to Section 16 of the Exchange Act. The acts of such delegatees shall be treated hereunder as acts of the Committee and such delegatees shall report regularly to the Committee regarding the delegated duties and responsibilities and any Awards so granted. Any such allocation or delegation may be revoked by the Committee at any time."

- "**Section 7.4   Non-Exclusivity.**  Neither the adoption of the Amended Plan by the Board nor the submission of the Amended Plan to the stockholders of the Company for approval shall be construed as creating any limitations on the power of the Board or the Committee to adopt such other incentive arrangements as either may deem desirable, including, without limitation, the granting of restricted stock or Stock Options otherwise than under the Amended Plan or an arrangement that is or is not intended to qualify under Code Section 162(m), and such arrangements may be either generally applicable or applicable only in specific cases."

- "'Disinterested Board Member' means a member of the Board who: (i) is not a current Employee of the Company or a Subsidiary; (ii) is not a former employee of the Company who receives compensation for prior Services (other than benefits under a tax-qualified retirement plan) during the taxable year; (iii) has not been an officer of the Company; (iv) does not receive remuneration from the Company or a Subsidiary, either directly or indirectly, in any capacity other than as a Director except in an amount for which disclosure would not be required pursuant to Item 404 of SEC Regulation S-K in accordance with the proxy solicitation rules of the SEC, as amended or any successor provision thereto; and (v) does not possess an interest in any other transaction with the Company or its Subsidiaries, and is not engaged in a business relationship for which disclosure would be required pursuant to Item 404(a) of SEC Regulation S-K under the proxy solicitation rules of the SEC, as amended or any successor provision thereto. The term Disinterested Board Member shall be interpreted in such manner as shall be necessary to conform to the requirements of section 162(m) of the Code, Rule 16b-3 promulgated under the Exchange Act and the corporate governance standards imposed on compensation committees under the listing requirements imposed by any national securities exchange on which the Company lists or seeks to list its securities."

21.  Given the substantial misstatements in both the Cash Plan and the Equity Plan concerning IRC § 162(m), these plans will have to be rewritten to conform to the current tax code.

22.  While there is no longer any specific requirement for the Cash Plan to be submitted to stockholders, the Equity Plan must be submitted to stockholders because, as Proposal 4 explains, "As a NASDAQ Stock Market listed company and under regulations of the Federal Reserve Bank, our primary federal regulator, we are required to obtain the approval of our stockholders before implementing an equity compensation plan such as the Equity Incentive Plan." This plan will expire on May 29, 2018 so it must be redrafted immediately and submitted to stockholder for approval before May 29, 2018.

23.  Finally, even outside these two proposals, the 2018 Proxy Statement contains several false statements concerning IRC § 162(m) that must be corrected:

- "During the fiscal year ended September 30, 2017, the Committee consisted of three members, Robert A. Fiala (Chairman), William C. Mulligan and John P.

       Ringenbach, each of whom is an independent director within the meaning of the NASDAQ listing rules, a disinterested director within the meaning of Rule 16b-3 under the Securities Exchange Act of 1934, as amended, and, with the exception of Mr. Ringenbach, a 'non-employee director' within the meaning of Section 162(m) of the Internal Revenue Code of 1986, as amended (the 'Code')."

- "***Deductibility of Compensation***  The Committee considers Section 162(m) of the Code, which provides certain criteria for the tax deductibility of compensation in excess of $1.0 million paid to the Company's named executive officers, in determining compensation of the named executive officers. It is the Committee's intent to maximize deductibility of executive compensation while retaining the discretion needed to compensate executive officers in a manner commensurate with performance and retention."

24.    The preceding misstatements compromise those that could be readily identified in this 50-page proxy statement that has an additional 32 pages of appendices. There may be other misstatements concerning IRC § 162(m), and those must also be corrected.

25.    As a result of the Tax Act, all of the statements listed above concerning Management Proposals 3 and 4 are false and misleading. This renders the 2018 Proxy Statement unlawful under § 14(a) of the Exchange Act.

26.    The preceding paragraphs state a direct claim for relief against TFS under § 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

27.    As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law.

28.    Management Proposal 4 request stockholder approval allowing the Company to award 8.45 million shares with an aggregate fair value of $136.3 million, according to the proposal. Unwinding these awards will be impossible once they are granted following the February 22, 2018 vote. As such, it is necessary for the Court to take action to enjoin the vote

beforehand to prevent shares from being distributed to participants based on an uninformed vote that lacks proper shareholder approval.

29. To ameliorate the injury, injunctive relief is required in the form of a corrected Cash Plan and Equity Plan and an amended proxy statement that provides the correct information concerning IRC § 162(m).

30. Consequently, TFS should be enjoined from presenting Proposals 3 and 4 for a stockholder vote at the February 22, 2018 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any TFS shareholder in connection with Proposals 3 and 4 in the 2018 Proxy Statement.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests the following relief:

A. A preliminary and permanent injunction, enjoining TFS from

(i) certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any TFS shareholder in connection with Proposal 3 in the 2018 Proxy Statement;

(ii) presenting Proposal 3 for a shareholder vote at the February 22, 2018 annual meeting;

(iii) certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any TFS shareholder in connection with Proposal 4 in the 2018 Proxy Statement;

(iv) presenting Proposal 4 for a shareholder vote at the February 22, 2018 annual meeting;

B. A preliminary and permanent injunction requiring TFS to correct the Cash Plan and the Equity Plan to provide the correct information concerning IRC § 162(m).

      C.      A preliminary and permanent injunction requiring TFS to furnish a supplemental proxy statement with the correct information concerning IRC § 162(m).

      D.      Awarding such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 12, 2018

**BARRACK, RODOS & BACINE**

By: /s/  A. Arnold Gershon
    A. Arnold Gershon
    Michael A. Toomey
    Eleven Times Square
    640 8th Ave., 10th Floor 10036
    New York, NY 10022
    Telephone: (212) 688-0782
    Facsimile: (212) 688-0783

*Attorneys for Plaintiff*